<div style="margin-left:auto; text-align:right">June, 1809.<br>HALE<br>v.<br>HALE.</div>

New trial not to be granted.

---

## JEHIEL HALE *against* ELISHA HALE.

WRIT of error.

This was an action of account, brought by *Elisha Hale* against *Jehiel Hale.*

In an action of account, alleging, that the plaintiff and defendant built a ship under an agreement, that each should contribute an equal moiety of the expense, and receive an equal moiety of the avails; that she received a cargo, and was sent to *Baltimore* by the plaintiff and defendant; thence, by direction of the plaintiff and defendant, she went to *London* with a cargo on freight; and afterwards performed several other voyages with a cargo on freight, and was, at last, sold at *Cadiz*, and that the defendant received more than his proportion of the ship, both of the voyages and the sale: Held, that the plaintiff and defendant were to be considered, under this declaration, as joint owners of the ship, and jointly interested in all her voyages, from the time she was built until she was sold; and that in order to adjust the accounts of the parties, it was proper for the auditors to inquire into the earnings of the ship, and the losses incidental to the voyages.

VOL. III.                                  3 C

June, 1809.

HALE
v.
HALE.

The declaration stated, that in *September*, 1800, the plaintiff and defendant began to build a certain ship, called the *Columbia*, as partners, it having been agreed, by them, that each should pay or contribute an equal moiety of the expense of the ship, and that each should receive an equal moiety of the avails. She was finished in *November*, 1801; and the plaintiff paid more than his proportion of the expense, *viz.* two thousand dollars. In the course of the same month, after receiving a cargo on board, she was sent, by the plaintiff and defendant, on a voyage to *Baltimore;* from thence she sailed, in *February*, 1802, by direction of the plaintiff and defendant, on a voyage to *London*, with a cargo on freight, where she arrived in *April*, 1802; and afterwards performed other voyages, *viz.* one from *London* to *Genoa*, with a cargo on freight; and from thence to *Cadiz;* at which last place she was, in *August*, 1802, sold and disposed of; and the defendant received more that his proportion of the avails of the ship, both of the voyages and the sale, *viz.* three thousand dollars over and above the one moiety of the avails, to account, &c.

The defendant having suffered a default, there was a judgment *quod computet;* auditors were appointed; and an award was made, in the plaintiff's favour, for 2,149 dollars and 18 cents.

The defendant remonstrated against the acceptance of this award for the following reasons:

1. That the defendant was required to account as the plaintiff's bailiff, and partner, in building and selling the ship *Columbia*, and was charged to be indebted only as having received of the sales of the ship more than his proper proportion, and as having contributed towards the building of the ship less than his proper proportion; yet, before the auditors, the plaintiff offered to prove, by

his own oath, and other testimony, that the plaintiff and defendant were partners in navigating and freighting the ship in her several voyages. To the admission of this evidence the defendant objected; but the auditors admitted it.

2. That the auditors allowed plaintiff 150*l.* lost by the plaintiff, by reason of his own default, in the purchase of a bill of exchange, drawn upon *John Broome*, in favour of the plaintiff; which bill was not received in payment of said ship, or for her freight and earnings.

3. That the auditors allowed the plaintiff 472*l.* 4*s.* for a quantity of dollars seized by the revenue officers at *Cadiz*, forfeited by the plaintiff's neglect in entering them for exportation, and with intent to defraud the government of *Spain* of its duties; though it was proved before the auditors, that the plaintiff knew the dollars would be liable to condemnation, if not entered.

4. That the auditors allowed the plaintiff 54*l.* 4*s.* 10*d.* for 41 dozen of shoe patterns, purchased by the plaintiff, on his own private account, at *Genoa*, which were seized at *Cadiz* as forfeited to the government of *Spain*, by reason of the plaintiff's personal misconduct; and that the auditors allowed the plaintiff 30*l.* money left at *Cadiz*, to defray the expenses of prosecuting his claim for the shoe patterns and the money.

To the allowance of these several claims the defendant objected before the auditors; but his objections were overruled.

To this remonstrance the plaintiff replied,

1. That as to the first exception, the allegations are not true.

June, 1809.

HALE
v.
HALE.

2. That as to the second, the plaintiff proved before the auditors, that said bill of exchange was purchased for a good bill, with money received for the sale of the ship, and for the joint interest and benefit of the plaintiff and defendant.

3. That as to the third, there was no proof that the dollars were seized by reason of any misconduct of the plaintiff in not entering them, or of any transaction of his at *Cadiz;* and that the residue of the exception was not true.

4. That as to the fourth. the shoe patterns were purchased for the joint benefit of the plaintiff and defendant, with money received for freight of articles on board said ship, in *Genoa* currency, which money was not current in any other country. The plaintiff then denied that it was proved before the auditors, that they were purchased on his private account, or that they were forfeited by any fraudulent conduct of his; and averred, that the 30*l.* was left to prosecute the joint claim of the plaintiff and defendant; and that all he did was by virtue of full power to act in all respects for the joint concern of the plaintiff and defendant, which fact was proved before the auditors.

The court found, that the allegations in the first exception were true; but adjudged them insufficient. The second exception they adjudged insufficient. The third they found not true. The fourth they held to be sufficiently answered by the facts stated in the plaintiff's replication, which they found to be proved.

The award was thereupon accepted.

*Ingersoll* and *Daggett,* for the plaintiff in error, contended,

1. That the first exception to the award was good; because the declaration did not charge the defendant in account for any arrears, except in the building of the ship, and the avails, that is, the proceeds on the sale. Before the defendant can be called upon to account for the earnings of the ship, it must appear, that as to those earnings he was the plaintiff's bailiff; and this for two reasons: first, that he may have the notice which he is entitled to, of what he has to defend against; and secondly, that the judgment in this case may hereafter be pleaded in another action. But this declaration does not allege that the voyages which the ship performed were undertaken for the joint benefit of the plaintiff and defendant, or that they were jointly interested in the freight.

[The counsel did not rely on the second exception.]

2. That the third exception ought to have prevailed; for though that part of it, which was denied, was found untrue, yet a part of it was admitted by the plaintiff in his answer thereto, and the fact so admitted clearly was not the subject of inquiry under this declaration.

3. That the loss on the shoe patterns was an adventure, in which there cannot be a pretence that the defendant was concerned. By the finding of the court, it appears, indeed, that the shoe patterns were purchased with money received for freight. But admitting that the plaintiff and defendant were jointly concerned in this freight, does it follow, that the plaintiff had, of course, a right to lay out the money for shoe patterns? Could the plaintiff, by his own act, make the defendant a partner with him in these purchases? Because *A.* and *B.* are partners in the building and sale of a ship, does that make them partners in every kind of traffic? Could

June, 1809.   the defendant have claimed a share of the *profits* if
              there had been any?

HALE
v.
HALE.

4. That the money paid to regain the dollars and
shoe patterns must follow the fate of the articles; and,
therefore, the auditors should not have made the de-
fendant account for it.

*Brace* and *Diwght*, for the defendant in error, insisted,
that the declaration covered the whole case. It is
alleged, that each was to pay half the expenses of build-
ing the ship; and that each should *receive half the avails.*
It is, however, contended, that the "*avails*" means the
*proceeds of a sale.* But it is not used solely in that
sense in this declaration; for the concluding averment
is, that the defendant received the avails, *both of the
voyages and of the ship.* The earnings of the ship,
while navigating for their joint benefit, are as much
avails as the proceeds of the sale. The auditors, then,
did right in admitting the evidence.

Should it be conceded, that the voyages from *London*
to *Genoa, &c.* were undertaken without the defendant's
consent, or approbation; yet it is alleged, that he *re-
ceived* more than his moiety of the freight as well as
the sale, and his receiving the avails of those voyages
ratifies the plaintiff's conduct, as fully as if it had been
within the letter of a power of attorney. The same
answer may be given to the purchase of the bill of ex-
change, and to the purchase of the shoe patterns, &c.

BY THE COURT. The demand is, that the defendant
render his account for the time the parties were con-
cerned, as copartners, or joint owners, of the ship. And
it is conceded, that they were joint owners from the
time she was built until she was sold at *Cadiz;* but it is
contended, that there are not sufficient averments in

the declaration, of their being jointly concerned in all the voyages she made while they continued owners.

It is averred, " that it was agreed, by and between the plaintiff and defendant, that each should pay and contribute an equal moiety of the expense of the ship, and receive an equal moiety of the avails thereof."

And again: " that the ship received a cargo in *November*, 1801, and was sent to *Baltimore* by the plaintiff and defendant; from thence, by the direction of the plaintiff and defendant, to *London;* and afterwards she performed several other voyages [specifying them] until she arrived at *Cadiz* in *Spain*, in the month of *August*, 1802, where she was sold; and the defendant received more than his proportion of the avails of said ship, both of the voyages, and of the sale thereof."

The plain and obvious meaning of these averments is, that they continued joint owners of the ship from the time she was built until sold in *Cadiz*, and under their direction; and that they were equally entitled to the avails of the ship and freight.

It was proper for the auditors to inquire into the transactions between the parties relative to the building of the ship, and all her voyages, until she was sold. The averments in the declaration embrace the whole of that time. And in order to adjust their accounts, it was necessary they should admit the proof objected to by the defendant.

If the voyages from *London* to *Italy*, and from thence to *Spain*, had been undertaken without the consent of the defendant; yet, as he received the avails thereof, it was an approbation of the plaintiff's conduct.

The defendant had an opportunity, before the auditors, to show, by his own relation under oath, what sums he received for the vessel and the freight. This action is an appeal to the party before the auditors for a disclosure under oath by our statute.(a)

<div align="right">Judgment affirmed.</div>

